This is a consolidated appeal from two judgments entered by the Athens County Court of Common Pleas. Appellant Halesh Patel challenges: (1) the trial court's denial of a modification of spousal support; and (2) an order finding him in contempt of court for failure to pay spousal support. Appellant assigns the following errors:
 "I. The Trial Court erred in determining that an insufficient change in circumstances exists for consideration of Plaintiff/Appellant's motion for modification of spousal support where: (i) the personal income of Plaintiff/Appellant had fallen nearly 50% since the date of divorce due to unforeseeable and uncontrollable economic factors; (ii) the uncontroverted testimony of an experienced vocational consultant indicate that Defendant/Appellee's income earning ability was substantial; (iii) the Defendant/Appellee made no effort to seek employment as intended by the parties through the Agreed Decree of Divorce; (iv) no evidence was provided to indicate that Defendant/Appellee suffers from any psychological impediments to employment; and (v) the Defendant/Appellee has demonstrated a marked lack of need for the substantial spousal support award provided through the Agreed Decree of Divorce which the Plaintiff/Appellant, in turn, has demonstrated a marked inability to pay."
 "II. The Trial Court erred and abused its discretion in allowing the Magistrate to: (i) perform her own de facto psychological evaluation of the Defendant/Appellee without the guidance or testimony of an expert witness with appropriate training to make such determinations; (ii) find the testimony of a vocational expert to be incredible without adequate support from the evidence presented at trial; (iii) base her denial of consideration of the motion to modify spousal support on irrelevant and archaic factors such as the existence of an illegitimate child for which Plaintiff/Appellant is providing support, and Plaintiff/Appellant's demonstrated inability to maintain payment of the current spousal support order.
 "III. The Trial Court erred and abused its discretion in ordering a purge order which is contrary to law insofar as it cannot even conceivably be complied with by Plaintiff/ Appellant due to the insufficiency of his income and in basing the purge order on future compliance."
We affirm the trial court's judgment denying the appellant a modification of spousal support. The trial court did not abuse its discretion in determining that there was an insufficient change in circumstances to warrant a modification of the original divorce decree, which set the level of spousal support. However, we vacate a portion of the trial court's contempt order. While the trial court did not err in finding appellant in contempt for failure to pay spousal support, we vacate the portion of the contempt order that purports to condition suspension of his jail sentence on remaining current in his support obligation.
 I.
Appellant and appellee Kathyayini Patel were married in India in 1973. The couple moved to Athens in 1978 where the appellant, a doctor, entered private medical practice. The appellant eventually opened up his own medical practice in Athens in 1987.
In 1994, the appellant and the appellee divorced. The parties filed an agreed decree of divorce ("divorce decree"), which the Athens County Common Pleas Court, Domestic Relations Division, approved. The divorce decree represented an agreement between appellant and appellee regarding the terms of their divorce and resolved all issues pending before the court. According to the terms of the decree, the appellant retained sole ownership of his medical practice, ownership of a recently-purchased home, and half of the parties' financial assets. The appellee received the marital residence and the remaining half of the marital assets. The divorce decree provided for spousal support, as well as child support for the couple's children, who were both minors at the time of the divorce. The divorce decree made the following provisions for spousal support:
 [Appellant] shall pay to [Appellee] the sum of Four Thousand Dollars ($4,000) per month as and for spousal support until such time as [Appellant] is no longer obligated to pay child support for Murali Patel. [Appellant] shall thereafter be obligated to pay to [Appellee] the sum of Five Thousand Five Hundred Dollars ($5,500) per month as and for spousal support until he is no longer obligated to pay child support for Sharath Patel. [Appellant] shall thereafter be obligated to pay Seven Thousand Dollars ($7,000) per month as and for spousal support until either party dies, [Appellee] remarries, or [Appellee] shares living expenses for an extended time with a person of the opposite gender (exlusing [sic] family members). The goal of the parties' agreement regarding spousal support is to maintain a $7,000 per month cash payment (inclusive of child support) from [Appellant] to [Appellee].
In addition to setting the terms of spousal support, the agreed entry addressed the circumstances concerning when the appellant could modify the amount of payments. On this issue, the divorce decree stated:
 The spousal support obligation for [Appellant] may be reduced by any amount [Appellee] earns from employment in excess of $15,000 annually; e.g., if [Appellee] earns $20,000 from employment, [Appellant's] spousal support obligation shall be reduced by $5,000 annually to $79,000. [Appellee] shall disclose her annual income to [Appellant] two times annually if requested by [Appellant], and the parties shall make the necessary adjustment in the spousal support as set forth herein. The Athens County Court of Common Pleas shall retain jurisdiction regarding the issue of spousal support pursuant to Ohio Revised Code § 3105.18(H). However, the parties' agreement which has been made a part of this Court's order is intended to maintain [Appellee] with minimum gross income of Eighty-four Thousand Dollars ($84,000) annually from [Appellant], and the amount of spousal support shall not be reduced unless a radical or drastic change in circumstances occurs to the parties * * *.
Both the appellant and the appellee attended medical school in India in the early 1970's. Although the appellee earned a medical degree from an Indian university in 1972, she has never been licensed to practice medicine in the United States. Rather than pursue a medical career, the appellee provided services as homemaker and mother of the couple's two sons.[1] Later, after the appellant opened his own practice, the appellee worked in his medical office salary-free. Although she never received any formal training as a medical office manager, the appellee handled medical insurance paperwork, paid the office's bills, and handled many of the financial aspects of the practice. The appellee stopped working at the office in 1993 when the appellant filed for divorce.
At the time of the parties' divorce, the appellant's practice had attained considerable success. In 1993, the last year of the parties' marriage, the practice produced $695,408 in gross income and a net income to the appellant of $367,980. Between the time of the divorce and the time the appellant moved for a modification of spousal support, the figures fluctuated. The practice's gross income increased to $799,975 in 1994, decreased to $752,604 in 1995, fell to $617,023 in 1996, and rose to $631,676 in 1997. At the time of the magistrate's hearing on the appellant's motion to modify spousal support, there were no figures available for 1998. The appellant's personal income from the practice showed a steady decline from 1994 to 1997. In 1994, the appellant's personal income peaked at $443,431, which represented approximately fifty-five percent of the practice's gross income. The following year, the appellant incorporated his medical practice, with the appellant as the sole shareholder. Thus, 1995 was the first year in which his gross personal income was a "salary" from the corporation. Prior to 1995, when the medical practice was a sole proprietorship, the net income of the practice constituted the appellant's personal income. That year, the appellant received a salary from the corporation of $400,000 (fifty-three percent of gross). The appellant's salary dropped to $297,500 (forty-eight percent of gross) in 1996. In 1997, despite an increase in gross income to the medical practice, the appellant's salary dropped to $252,250 (forty percent of gross).
The appellant failed to meet his combined child and spousal support obligations, prompting the Athens County Child Support Enforcement Agency to file a motion for contempt and/or judgment for arrearages in 1997. Although the court found that the appellant overpaid his child support obligation, the court found him $43,438.40 in arrears on his spousal support obligations to the appellee. The court found the appellant in contempt and sentenced him to ten days in jail, but gave him "an opportunity to purge his contempt by remaining current on his child and spousal support obligation, plus pay an additional $1,000.00 per month towards his outstanding spousal support arrearage."
While the contempt action was pending, the appellant moved for a modification of his spousal support obligation. The appellant cited the reduction in his income and resulting cash flow problems, as well as the appellee's failure to secure employment since the divorce, as changed circumstances supporting a modification. At the time of the motion, the appellant no longer had an obligation to support the parties, oldest child. However, the appellant was obligated to pay $1,500 per month to support the couple's remaining minor child and $5,500 per month, or $66,000 annually, in spousal support. The magistrate recommended dismissal of the appellant's motion. The trial court agreed, adopting the magistrate's recommendations, and dismissed the appellant's motion.
The appellant filed timely appeals to both the denial of his motion to modify spousal support and the court's contempt order.
 II.
Appellant's lengthy assignments of error, when read as a whole, raise two issues. First, the appellant insists that sufficient changed circumstances existed to support modification of spousal support. Second, the appellant argues that the trial court did not correctly determine what the spousal support order should have been in light of the appellee's earning capabilities. we address these arguments in turn.
The magistrate found, and the trial court agreed, that the appellant had not demonstrated sufficient changed circumstances to justify a downward modification of the spousal support contained in the agreed divorce decree. The "changed circumstances" analysis is a threshold inquiry that the court must make before the court considers the appropriateness of the current spousal support order. Thacker v. Thacker (1991),74 Ohio App.3d 348, 350; Leighner v. Leighner (1986), 33 Ohio App.3d 214,215.[2] The trial court is afforded a wide latitude in determining spousal support issues, including issues regarding the modification of spousal support. Bolinger v. Bolinger
(1990), 49 Ohio St.3d 120, 122; Carnahan v. Carnahan (1997),118 Ohio App.3d 393, 397. An appellate court will not reverse a determination on spousal support unless the trial court has abused its discretion. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,218; Foster v. Foster (Sept. 16, 1997), Athens App. No. 96 CA 1767, unreported. Under the abuse of discretion standard of review, we will affirm the trial court's judgment unless the decision is unreasonable, arbitrary, or unconscionable. Blakemore, 5 Ohio St.3d at 219; Masters v.Masters (1994), 69 Ohio St.3d 83, 85. In making this highly deferential review, an appellate court may not freely substitute its judgment for that of the trial court. In re JaneDoe 1 (1991), 57 Ohio St.3d 135, 137-38.
The appellant asserts that his income has decreased since the time of the divorce decree, justifying a reduction in his spousal support obligation. See R.C. 3105.18(F)("changed circumstances of a party" includes an involuntary decrease in payor's salary). To justify a modification of child support, a change in circumstances must be "substantial."Leighner, supra, 33 Ohio App.3d at 215; see, also, White,supra; Lust v. Lust (Oct. 28, 1992), Scioto App. No. 1991, unreported. When the changed circumstance is a reduction in the payor's income, the court must not order modification "merely because a party no longer has as much income as he had when the original decree was entered." Blunden v. Blunden (May 26, 1994), Cuyahoga App. No. 65595, unreported. The reduction must be material, not brought on by the party seeking modification, and not contemplated by the parties at the time of the prior spousal support order. Eitel v. Eitel (Aug. 30, 1994), Franklin App. No. 93APF-1745, unreported; see, also, Lust, supra. In addition, the court must also consider the earningcapabilities, as well as the actual earnings of the party seeking modification. Eitel, supra. For this reason, a court will not find a change of circumstances when the reduced income causes "mere trifling" or temporary changes. Smedley v. Smedley
(Sept. 27, 1995), Montgomery App. No. 15017, unreported. The party seeking the modification has the burden of proving a changed circumstance justifying a change in the level of spousal support. Joseph v. Joseph (1997), 122 Ohio App.3d 734,736; see, also, Blunden, supra (party seeking reduction must present clear and convincing evidence of an inability to pay spousal support).
In this case, the trial court did not assess whether there was a "substantial" change in circumstances to justify a modification of spousal support. Rather, the trial court and the magistrate analyzed the pertinent language in the divorce decree addressing the issue of modification. The decree expressly stated that modification would not take place absent a "drastic" or "radical' change in circumstances. The magistrate concluded, and the trial court agreed, that the parties therefore agreed to a higher degree of "changed circumstances" being present before the trial court could modify the spousal support determination.
If a provision of a divorce decree is subject to more than one reasonable interpretation, the court has jurisdiction to interpret and clarify it. Quisenberry v. Quisenberry (1993),91 Ohio App.3d 341, 348. In clarifying decrees, however, courts have distinguished between decrees containing terms ordered by the court and decrees which incorporate agreements of the parties. When a decree incorporates a separation agreement agreed to by the parties, regular rules of contract interpretation determine the meaning of any ambiguous language.Keeley v. Keeley (July 21, 1997), Clermont App. No. CA-97-02-013, unreported; Scott v. Scott (Apr. 29, 1994), Lucas App. No. L-93-251, unreported. Construction of contracts is a question of law and, accordingly, we review the lower court's construction of the written instrument de novo. Graham v.Drydock Coal Co. (1996), 76 Ohio St.3d 311, 313.
In construing contract language, our principal goal is to give effect to the intent of the parties. See Skivolocki v.East Ohio Gas Co. (1974), 38 Ohio St.2d 244, syllabus. The parties, intent is presumed to reside in the language they have employed in the written agreement. Kelly v. Medical Life Ins.Co. (1987), 31 Ohio St.3d 130, paragraph one of syllabus. We will give common words in a written instrument their ordinary meaning unless manifest absurdity results or unless some other meaning is clearly evidenced from the instrument. Alexander v.Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, paragraph two of syllabus.
We agree with the magistrate and the trial court that the "drastic" or "radical" change in circumstances agreed to by the parties as a prerequisite to a spousal support modification is something more than a "substantial" change in circumstances ordinarily required by R.C. 3105.18. The common and ordinary meanings of "drastic" and "radical" reveal significant differences in degree from the term "substantial." "Drastic" is defined as "extremely severe or extensive." Webster's New Universal Unabridged Dictionary (1996 ed.) 594 (emphasis added). Similarly, "radical" is defined as "thoroughgoing orextreme." Id. at 1592 (emphasis added). These definitions differ markedly from "of ample or considerable amount, quantity, size, etc.," which is the definition of "substantial." Id. at 1897. By using terms signifying a heightened sense of degree, the parties intended to prevent modification of the appellee's spousal support when R.C.3105.18 may otherwise permit it. Had the parties, each represented by counsel in the underlying divorce action, intended to make a modification possible under the existing legal standard of a "substantial" change in circumstances, they could have easily done so by utilizing appropriate language.
The appellant argues that the magistrate and trial court erred by engaging in an analysis of contract interpretation in the present case. Appellant insists that R.C. 3105.18 provides the standard by which to determine whether his circumstances have changed, leaving the contractual analysis "unnecessary." Appellant would have us look at his income, recognize its decrease, and automatically find a change of circumstances. This approach belies and nullifies the language of the parties' divorce decree. We find nothing in R.C. 3105.18 that prevents the parties from agreeing to a higher standard of changed circumstances shown before spousal support is modified. Cf.Smith v. Collins (1995), 107 Ohio App.3d 100, 103 (nothing in statute prevents party from voluntarily undertaking greater amount of child support than the statutory level). The magistrate and trial court did not err in finding that the parties agreed to a higher standard than a "substantial" change of circumstances.
Having found that the magistrate and trial court correctly identified the degree of 'changed circumstances' that could justify a modification, we must now analyze whether the court abused its discretion in finding no "radical" or "drastic" decrease in the appellant's income. See Carnahan, supra,118 Ohio App.3d at 397 (appellate court reviews lower court determination of changed circumstances under abuse of discretion standard). The evidence shows that the gross income of the appellant's practice was almost $65,000 less in 1997 than it had been in 1993, the final year of the parties' marriage.[3] During this same period, the appellant's net income (after personal income taxes) fell by almost $60,000. The magistrate and trial court determined that this income drop did not rise to the level of a "drastic" or "radical" change in circumstances.
Changes in income, to support a modification of spousal support, must be involuntary and not brought on by the payor. See Eitel, supra; Haynie v. Haynie (1984), 19 Ohio App.3d 288,290. The court's findings of fact and conclusions of law indicate its doubt over whether the income decreases were involuntary or due to the appellant's actions in maintaining his practice and manipulating expenses. The magistrate and the court specifically noted that the appellant had "failed to demonstrate specific evidence why there was a sharp increase in expenses as a percentage of the corporation's gross income." The appellant disputes the magistrate and court finding that there was a 'sharp increase" in expenses. However, in 1993, the last full year before the parties entered the divorce decree, the medical practice had expenses constituting approximately forty-seven percent of the gross. In 1997, this percentage had risen to approximately fifty-nine percent of gross. Thus, the court and the magistrate had ample basis to conclude there had been a "sharp increase" in the practice's expenses as a percentage of gross income.
The appellant also presented testimony from his accountant, who testified that the decline in income to the practice was attributable to changes in health care policies, particularly managed care. However, the magistrate and trial court found this explanation lacking. Significantly, the accountant testified that he had no way of verifying whether expenditures characterized as 'business expenses' were actually business expenses. For example, one of the appellant's "business expenses" was the lease of a Lexus automobile at a cost of $9,600 annually to the corporation. Although the automobile is characterized as a "business expense," the appellant is the sole officer of the corporation. Thus, the automobile is, in reality, for the appellant's personal benefit. Moreover, the appellant submitted evidence that the practice spent over $100,000 in "general office expenses" above and beyond the business's various itemized expenses. The appellant could not explain to the court with any degree of certainty what the definition of "general office expense" was, leaving these costs a mystery. These questionable areas lend sufficient support for the trial court's finding that the reduction "may be due to the management of his practice rather than changes in health care policies." We find no abuse of discretion in the trial court's determination. See Medoff v. Medoff (June 15, 1995), Cuyahoga App. No. 67434, unreported (no abuse of discretion to find support obligor "voluntarily underemployed" because of failure to modify business practices to maximize earning potential).
The magistrate also noted other factors in deciding that there was an insufficient change in circumstances to justify a spousal support modification. These factors were: (1) the tax consequences of the spousal support, namely that it was deductible to the appellant; (2) the reduction in cash flow was due in part to the appellant's borrowing money to pay off tax liabilities from 1993; (3) the fact that the appellant was subject to a child support obligation to a child who was not of the marriage; and (4) the appellant's "largess" with regard to his standard of living. The appellant argues that the trial court erred in considering any or all of these factors, saying each is irrelevant to whether a modification of spousal support was warranted. The appellant argues that the magistrate's inquiry was limited to whether there was an "involuntary" decrease in income. Having answered that in the affirmative, the appellant argues, the court must then examine the factors contained at R.C. 3105.18(C)(1) to determine whether a modification is appropriate and how much the modification should be.
The appellant, however, is overly simplistic. First, as noted previously, the trial court and the magistrate did not find the appellant's income decrease to be "involuntary." Second, the factors weighed by the magistrate fall under the various categories contained in R.C. 3105.18(C)(1). The R.C.3105.18(C)(1) factors, which the court uses in determining what level of spousal support is appropriate under the circumstances, are also germane to the threshold inquiry of whether a changed circumstance exists. Joseph, supra, 122 Ohio App. 3
d at 738; Dunbar v. Dunbar (July 30, 1998), Cuyahoga App. No. 73036, unreported. Further, R.C. 3105.18(F) states that a change in circumstances "includes, but is not limited to, any * * * involuntary decrease in the party's wages." (Emphasis added.) Thus, the statutes contemplate examining other factors in the changed circumstances inquiry, which may include those listed in R.C. 3105.18(C)(1).
We find no abuse of discretion in the magistrate's consideration of the factors cited above. Each is relevant to whether the decrease in the appellant's income was "drastic" or "radical" and whether the corresponding shortfall in cash allegedly available to the appellant was contemplated in the prior divorce decree or brought on by the appellant.
First, the magistrate commented on the tax consequences of the spousal support obligation as a reason why the appellant's income reduction was not extensive or severe enough to warrant a modification. The magistrate concluded that:
 The tax consequences of an award in spousal support run to the benefit of the payor. In this instance, [appellant], given his high income, is in a fifty-five (55) percent tax bracket. Paying his spousal support reduces his tax liability. Fifty-five (55) percent of what he agreed to pay to [appellee] will go to the government as taxes if he does not pay spousal support. If the entire award of spousal support were eliminated, he would not save $66,000.00 per year but would only save forty-five (45) percent of this amount, or $29,700.00. The Court must focus on this figure. Has the [appellant] lost the ability, through reduction in income, to pay [appellee] $29,700.00 per year?
The tax consequences of a spousal support are relevant to whether the appellant's reduction in salary is "drastic" or "radical." If the spousal support payments are tax-deductible, which the appellant does not dispute, tax consequences help to determine whether a change in income can be significant enough to justify a modification.[4]
Another factor considered by the magistrate and complained of by the appellant was the child support paid by the appellant for his nonmarital child born during the marriage. The appellant characterizes the magistrate's consideration of this support as an 'irrelevant and archaic' factor. However, a review of the hearing transcript indicates this was a relevant factor for the magistrate to consider. The appellant claimed an inability to pay spousal support at the agreed-upon level due to his lack of sufficient income. The appellant's reduced income was only one reason given for this. The other was the appellant's numerous expenses, including the $2,500 monthly support obligation to the non-marital child. While the appellant considers his child support obligation to be irrelevant, it was a legitimate factor in the magistrate's analysis of whether such an expense should be subordinate to the appellant's spousal support obligation. In this case, the appellant knew that he had a duty to support the nonmarital child and was paying support at the time of the divorce. Thus, his child support obligation was contemplated by the parties at the time of the divorce. Because the parties knew about this expense at the time of the agreed divorce decree, the magistrate decided that this expense should not be a reason for reducing the spousal support obligation. We find no abuse of discretion in such a determination.
Additionally, the magistrate considered the appellant's substantial repayment of loans and the travel expenses the appellant continues to make in spite of his reduction in income. The appellant cited the loan repayment as a reason for his reduced cash flow, explaining that he had to borrow money extensively to compensate for his underpayment of taxes in 1993. However, a party's voluntary decision to assume additional debt does not provide a reason for reducing spousal support. See Thacker, supra, 74 Ohio App.3d at 350; Shanley v.Shanley (1989), 46 Ohio App.3d 100, 101. The magistrate noted that the appellant himself was responsible for the tax underpayment and failed to explain why he had to borrow so much money to meet the debt in 1994, a year when his medical practice peaked in gross income. As for the appellant's travel expenditures to various locales such as Europe and the Caribbean, the magistrate did not err in considering these facts to determine whether the appellant truly had an inability to pay support. Further, there is ample support in the record for the magistrate's finding that the appellant sees little reason to curtail such expenses. While the appellant argued that he uses frequent flier airline vouchers for most of his travel and has curtailed his travel in recent years, there is little question that the appellant feels the need to continue spending money on his vacations at the expense of paying his spousal support obligation. We cannot dispute the magistrate's finding that these expenditures, as well as other questionably high expenses in the record, could not be used to justify a modification based on an inability to pay.
The appellant also challenges the court's determination that the appellee's failure to secure employment was not a change in circumstances justifying a reduction in spousal support. A spousal support obligee's failure to secure employment does not, by itself, always constitute grounds for a modification.Bronson v. Bronson (Feb. 13, 1992), Franklin App. No. 91-AP-904, unreported; Haninger v. Haninger (1982), 8 Ohio App.3d 286,287. While the appellant does not dispute this point of law, he argues that these cases are inapposite because the divorce decree agreed to by the parties "requires" reasonable attempts by the appellee to become employed on a full-time basis. We disagree with the appellant.
The appellant's argument reads a term into the decree that does not exist. The language of the decree does not "require" a reasonable attempt to secure employment. To the contrary, it provides that the appellant's spousal support obligation "may be reduced by any amount [Appellee] earns from employment in excess of $15,000.00 annually * * *." (Emphasis added.) The language in the divorce decree means simply that the appellee may earn up to $15,000 per year without reducing her right to receive $84,000 annually from the appellant. Indeed, the agreement is "intended to maintain [appellee] with minimum gross income of Eighty-four thousand Dollars ($84,000) annually from [appellant] * * *." The appellant agreed to pay this amount. The decree contains no language imposing a "reasonable efforts to obtain employment" requirement on the appellee's part. We decline to impose a duty on the appellee that does not exist in the divorce decree's plain language.
The appellant also contends that the trial court and magistrate failed to determine whether the appellee still had "financial needs" as they relate to spousal support. It is true that modification of spousal support may occur when the court determines that there has been a change in circumstances regarding the supported spouse's need for support. SeeBlunden, supra. However, we can find no evidence in the record to support a determination that the appellee's financial needs have changed in any "drastic" or "radical" manner since the time of the divorce. The appellee has no significant sources of income other than the spousal support award and has not been employed. The appellee's financial needs appeared to be no different at the time of the hearing than they were when the appellant agreed to pay her $84,000 annually in combined child and spousal support.
In sum, we find no abuse of discretion in the magistrate and trial court's determination that the appellant has failed to establish a "drastic" or "radical" change in circumstances to justify reduction in spousal support. The appellant's arguments in this regard are not well-taken.
 II.
The appellant also challenges the trial court's determination regarding the appellee's earning capacity. The appellant contends that he presented substantial evidence, including expert testimony from a vocational consultant, establishing that the appellee could earn an annual salary in excess of $15,000 per year due to her skill and experience as an office manager. The appellant also emphasizes the appellee's failure to pursue any work in the medical field given her 1972 medical degree from a university in India.
The magistrate was not required to assess the appellee's true earning abilities in this case. As we have previously indicated, there is evidence in the record to support the magistrate's finding that neither the appellee's earning abilities nor her financial needs had changed since the parties entered into their divorce decree in 1994. It is true that the relative earning ability of a spousal support obligee is a relevant consideration in determining the appropriate level of spousal support. R.C. 3105.18(C)(1)(b); see, also,Lust, supra. However, the trial court need not examine the appropriateness of an existing spousal support order unless the party seeking modification proves the threshold requirement of changed circumstances. See Leigner, supra,33 Ohio App.3d at 215; Towne v. Towne (Nov. 27, 1996), Summit App. No. 17772, unreported. Because the magistrate found no changed circumstances justifying a modification, it could not grant the appellant's motion. Nevertheless, we address the appellant's argument on this issue and find it unpersuasive.
The appellant argued extensively that the appellee had an earning capacity of well over $15,000. Based on this argument, the appellant asserted that the appellee should have income imputed to her commensurate with her earning abilities, with the spousal support obligation reduced accordingly. The magistrate rejected this argument:
 * * * [Appellant's] arguments that potential income should be imputed to [appellee] derive from general rules that are applied to parents in child support situations, namely that a parent has a duty to support the child and, therefore, must make a good faith effort to find employment or, failing such good faith effort, the Court may impute potential income to that nonsupportive parent based on past work history and ability to earn.
 The Magistrate is unaware of any statute or case law that applies these same general principles when the issue is spousal support nor have any such authorities been supplied by [appellant]. For guidance purposes, the Court can consider [Bronson v. Bronson, supra] which indicates that the recipient of spousal support has no obligation to seek employment.
 Beyond that, the magistrate concludes that, in this instance, the underlying principles are irrelevant, because [appellant] has failed to demonstrate to the satisfaction of the Magistrate
that, should [appellee] seek employment in the community, she is qualified to earn more than $15,000.00 per year or even that any employment is presently available for which she might qualify. If her depressed emotional state is readily apparent to the Court, it would surely be readily apparent to any potential employer. Her medical degree is so far out-of-date as to be meaningless given the advances in technology in the past twenty-five years. Although she has experience in medical office management, she has no formal training in that are and only worked in a family-owned business. (Emphasis added.)
The magistrate made clear that the appellant did not meet its burden of proof even if it could impute income to the appellee. See Guerrero v. Guerrero (Feb. 15, 1991), Trumbull App. No. 90-T-4354, unreported (party seeking reduction in spousal support has burden of proving both changed circumstances and
that existing award is unnecessary or unreasonable). The appellant insists that this conclusion was against the weight of the evidence. In general, when addressing a claim that a lower court's decision is against the weight of the evidence, we will not upset determinations "supported by some competent, credible evidence * * *." Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80 (quoting C.E. Morris Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279, syllabus). It is the trial court's job, as trier of fact, to resolve disputes of fact and weigh the credibility of the testimony and evidence. Bechtol v.Bechtol (1990), 49 Ohio St.3d 21, 23. We give deference to the trial court because of the knowledge that "the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proferred testimony." SeasonsCoal, 10 Ohio St.3d at 12-13.
The appellant complains that the magistrate improperly rejected the testimony of Mr. Steven Rosenthal, a vocational consultant, who testified to the appellee's earning capacity. Mr. Rosenthal opined that the appellee, with her office managerial experience, could garner full-time employment paying $20,000 to $25,000 annually. Simply because the magistrate did not find Mr. Rosenthal's testimony persuasive, however, does not mean that her decision was against the manifest weight of the evidence. The magistrate reasonably considered other factors that Mr. Rosenthal did not weigh in his determination of the appellee's earning capacity. For example, Mr. Rosenthal never met the appellee and did not consider that the appellee's work experience in Athens was limited to the family-owned business context. Moreover, the appellant did not have Mr. Rosenthal consider that the appellee had not worked in a medical office since 1993. This fact was potentially significant given the appellant's insistence that various changes in the medical field had taken place due to managed health care. As the magistrate observed, "all of [appellee's] experience predates the implementation of managed care in the health profession. Thus, even her medical office background would appear to be outdated." Notwithstanding the appellant's insistence that Mr. Rosenthal's testimony was beyond dispute, the magistrate could reasonably conclude that Mr. Rosenthal's testimony was not persuasive on the issue of the appellee's earning capacity.
Another factor the magistrate cited was the appellee's demeanor and apparent emotional state. In the findings of fact, the magistrate noted that:
 [Appellee] has not sought employment since the time of the divorce. Her demeanor and testimony indicate a person who has been emotionally shattered by the divorce and related financial problems. She appears totally lacking in self esteem, and has had to deal with the emotional and mental problems emanating from [appellant's] affair, the subsequent birth of the out-of-wedlock child, the separation, and the divorce.
The appellant characterizes the magistrate's findings regarding the appellee's emotional state as a "de facto psychological evaluation' that was improper without expert testimony from a psychologist. The appellant emphasizes that the appellee consulted with a therapist only twice since the divorce and that she did not seek to introduce testimony from her therapist during the modification hearing.
We find nothing improper about the magistrate's findings regarding the appellee's emotional state. The magistrate did not find that the appellee suffered from any psychological condition. Instead, the magistrate's findings were aimed at the appellee's testimony and demeanor, which the magistrate observed firsthand at the hearing. As the trier of fact, the magistrate was in the best position to view the appellee's testimony, appreciate the emotion and demeanor of it, and weigh her testimony and the evidence accordingly. Seasons Coal,supra, 10 Ohio St.3d at 12-13.
We find no reversible error in the magistrate's determination regarding the appellee's earning capacity. Accordingly, the appellant's assignments of error with regard to this issue are overruled.
 III.
Appellant makes the additional argument that the magistrate inappropriately assumed a "litigious stance" on behalf of the appellee during the hearing regarding modification. In support of this allegation, the appellant's brief quotes a lengthy excerpt from the hearing, during which the magistrate posed questions to both appellant and appellee. The appellant complains that the magistrate's questions reveal bias against him and an attempt to "aggressively develop" the appellee's case.
Evid.R. 614(B) allows the court to "interrogate witnesses, in an impartial manner, whether called by itself or a party." Our inquiry is limited to whether the trial court abused its discretion in its eliciting of responses from a witness.Metaullics Sys. Co. L.P. v. Molten Metal Equip. Innovations,Inc. (1996), 110 Ohio App.3d 367, 370; Mentor-on-the-Lake v.Giffin (1995), 105 Ohio App.3d 441, 448; Paulding-Putnam Coop.,Inc. v. Kuhlman (1997), 117 Ohio App.3d 156, 162-63.
Our review of the transcript does not lead us to believe that the magistrate acted improperly. The excerpts cited by appellant indicate that the magistrate was trying to grasp the nature of the appellant's income, assets, and expenses. Further, given the testimony by appellant, particularly his inability to account for various expenses in more than general or conclusory fashion, the magistrate had ample reason to inquire into these facts. "A judge is to be commended for any determination displayed * * * to secure the truth." State exrel. Wise v. Chand (1970), 21 Ohio St.2d 113, 123 (Taft, C.J., dissenting). We see nothing in the transcript that shows an arbitrary, unreasonable, or unconscionable attitude by the magistrate that would constitute an abuse of discretion. While appellant alerts us to the magistrate's "tone" and "demeanor" in questioning him, we can only evaluate the transcript, which does not reveal such bias. Further, because there was no jury, it cannot be said that tone or demeanor may have led to an improper influence upon a trier of fact. Cf. Giffin, supra,105 Ohio App.3d at 449 (judge must be careful not to have manner of questioning influence jury). We find no merit in the appellant's claims of improper questioning by the magistrate.
 IV.
In his third assignment of error, the appellant challenges the contempt order issued by the magistrate and the trial court. The appellant argues that the contempt order failed to give him an opportunity to purge his contempt and that, in any event, he was without sufficient income to pay his arrearages in spousal support.
We will not reverse a contempt sanction unless the trial court has abused its discretion. State ex rel. Ventrone v.Birkel (1981), 65 Ohio St.2d 10, 11. The propriety of a contempt sanction depends first upon whether the contempt was civil or criminal in nature. Tucker v. Tucker (1983), 10 Ohio App.3d 251,252. Violations of court orders which are primarily offenses against the party benefitted by the order constitute civil contempt. See Brown v. Executive 200, Inc. (1980),64 Ohio St.2d 250, 253. Punishments for civil contempt are remedial or coercive, and not punitive in nature. Id.; Carrollv. Detty (1996), 113 Ohio App.3d 708, 711. Civil contempt sanctions must therefore allow the contemnor an opportunity to purge himself of the contempt. Id. at 712; In re Purola (1991),73 Ohio App.3d 306, 312; see, also, Brown,64 Ohio St.2d at 253 (in civil contempt, prison sentences are conditional and contemnor "is said to carry the keys of his prison in his own pocket"). Nonpayment of court-ordered spousal support is classed as a civil contempt. Marden v. Marden (1996), 108 Ohio App.3d 568,570.
In this case, the court's contempt order stated:
 * * * the [appellant] shall be sentenced to serve ten (10) days in the Southeastern Ohio Regional Jail but that those days need not be served as long as, for a period of one year, the [appellant] remains current on his present child and spousal support payments and makes additional monthly payments of 1,000.00 on the outstanding arrearages
* * *. (Emphasis added.)
The appellant argues that the order does not give him a valid opportunity to purge because the terms condition suspension of his sentence on future compliance with the court's existing support order. We agree with the appellant. While an order may provide for suspension of a jail sentence on condition that the contemnor pay an arrearage, it may not purport to regulate future conduct. Tucker, supra, 10 Ohio App.3d at 252. In this case, the court's order inappropriately attempts to regulate the appellant's future conduct by conditioning suspension of his jail sentence on his making payments on current spousal and child support obligations. See Marden, supra,108 Ohio App.3d at 571. A contempt order regulating future conduct "simply amounts to the court's reaffirmation of its previous support order and can have no effect since any effort to punish a future violation of the support order would require new notice, hearing, and determination." Tucker, 10 Ohio App.3d at 252. Had the court's order conditioned the suspended jail sentence on monthly payments toward the appellant's arrearages, the order would have presented a valid opportunity to purge. See Id.
Instead, the plain language of the court's order conditions purging on the appellant making arrearage payments and staying current on the pre-existing support obligations. We therefore vacate the portion of the order purporting to condition suspension of the appellant's jail sentence on his remaining current in his support payments.
The appellant also argues on this appeal, as he did below, that he is unable to pay spousal support at the level mandated by the agreed divorce decree. The appellant essentially asks us to find the magistrate and trial court findings to be against the weight of the evidence. In contempt proceedings, however, the party who failed to comply with a court order to pay support bears the burden of proving his inability to pay. SeePugh v. Pugh (1984), 15 Ohio St.3d 136, 140; Collins v. Collins
(Aug. 22, 1995), Athens App. No. 95CA1661, unreported. "The person who failed to comply must show his inability to be real and not self-imposed, nor due to fraud, sharp practices, or intentional avoidance." ' Keeley v. Keeley, supra (quotingDeWitt v. DeWitt (Mar. 22, 1996), Darke App. No. 1386, unreported). The magistrate and trial court cited numerous areas in which the appellant could conceivably curtail his expenses and meet his obligations to pay the arrearages on the spousal support. In adopting the magistrate's recommendation, the trial court explained:
 The Court finds from the evidence presented at the February 13, 1998 hearing that [the appellant] has money to pay $1,000.00 [towards the arrearages] if he curtails his spending. For example, [the appellant] has a Lexus automobile for his medical practice and another automobile for his personal use when it appears that he only needs one vehicle. The [appellant] voluntarily paid for a newer automobile for his emancipated older child whom he is no longer obligated to support. The [appellant] spends $2,000.00 per month on housing for himself alone. The [appellant] travels extensively.
There is ample evidence in the record to support a determination that the appellant can make the court-ordered payments toward his spousal support arrearages. The magistrate and the trial court were unconvinced that the appellant's financial circumstances were either involuntary or sufficiently drastic to render him incapable of paying toward his arrearages. With the appellant failing to adequately answer legitimate questions about his "business" expenses and his apparent refusal to alter his lifestyle in order to make his support payments, we find no reversible error in the trial court's determination that the appellant was capable of making payments toward his arrearages.
We sustain the third assignment of error to the extent that we vacate the portion of the order purporting to regulate the appellant's future payments on his support obligation. We affirm the remainder of the contempt order, including the portion allowing the appellant to purge his contempt by making monthly payments toward his arrearages.
JUDGMENT AFFIRMED IN PART AND VACATED IN PART.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART AND VACATED IN PART and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court, Domestic Relations Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Kline, P.J. and Abele, J.: Concur in Judgment and Opinion.
For the Court
 BY: ________________________ William H. Harsha, Judge
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes afinal judgment entry and the time period for further appealcommences from the date of filing with the clerk.
[1] Murali Patel was born on November 11, 1978. Sharath Patel was born on February 12, 1981.
[2] The initial inquiry is whether the trial court retained jurisdiction to modify the provisions of the divorce decree. See R.C. 3105.18(E); White v. White (Mar. 3, 1998), Scioto App. No. 97-CA-2511, unreported. In this case, there is no dispute that the trial court retained jurisdiction to modify the terms of its spousal support order.
[3] The appellant argues that he had a "20% reduction in gross revenues to the business between 1994, the year of the Agreed Decree of Divorce, and 1997." By citing a twenty percent decrease, the appellant emphasizes his 1994 gross income of $799,975 as the income by which to measure a changed circumstance. However, the parties' divorce decree took effect in June, 1994. Thus, it appears that the 1993 income figures were the last full-year numbers known to the parties. The 1994 figures were not known by the court when it made its order. Inquiry regarding the existence of changed circumstances must begin from the time the existing order was entered. SeeSeagraves v. Seagraves (Apr. 19, 1996), Montgomery App. No. 15588, unreported; Bingham v. Bingham (1983), 9 Ohio App.3d 191.
[4] We note that the magistrate accepted the appellant's assertion at the hearing that he paid fifty-five percent of his income in taxes. The evidence belies this claim. In 1997, the combined total of federal taxes, state and local taxes, Medicare, and Social Security deductions amounted to approximately thirty-eight percent of the appellant's personal income. Those same deductions amounted to approximately thirty-three percent of net income in 1996. Thus, the magistrate's numbers appear to be incorrect in determining the actual tax benefit to the appellant. However, the appellant invited error in this regard by claiming he paid fifty-five percent of his income in taxes. A party is not permitted to take advantage of any error he invited or induced the court to make. Portsmouth v. Ritch (May 11, 1998), Scioto App. No. 97CA2491, unreported (citing Stateex rel. O'Beirne v. Geauga Cty. Bd. Of Elections (1997),80 Ohio St.3d 176, 181).